UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Atmos Nation, LLC,

          Plaintiff,      Case No. 5:14-cv-11019
                                    Hon. Judith E. Levy
v.                                  Mag. Judge R. Steven Whalen

Rafi Kashat,

          Defendant.

_____/

**OPINION AND ORDER ENTERING FINAL DEFAULT JUDGMENT FOR PLAINTIFF ATMOS NATION, LLC [7]**

    This is a motion for entry of a final default judgment by plaintiff Atmos Nation, LLC against defendant Rafi Kashat pursuant to Fed. R. Civ. P. 55(b).  (Dkt. 7).  After consideration of plaintiff's motion, the Court will enter a final default judgment and award appropriate relief and damages.

**I.**     **Background**

    A clerk's entry of default was entered against defendant in this case on April 7, 2014.  (Dkt. 6).  As such, the defendant is deemed to

1

have admitted all of plaintiff's well-pleaded allegations. *Visioneering Const. v. U.S. Fidelity and Guar.,* 661 F.2d 119, 124 (6th Cir.1981).

    Plaintiff is a designer, marketer, and seller of portable vaporizers used to heat tobacco and nicotine for inhalation, such as in e-cigarettes. Pursuant to that enterprise, plaintiff has registered "Atmos RX" design and word marks with the Unites States Patent and Trademark Office, and holds valid trademarks for each in relation to "electronic vaporizers" and "smoker's articles, namely, handheld electronic vaporizers for personal inhalation of dry herbs and oils." (USPTO Registration Nos. 4,052,873, 4,052,867, 4,410,411, and 4,410,410, recorded with customs respectively as TMK 13-00649, TMK 13-01086, TMK 13-01068, and TMK 13-01180.) These trademarks were secured on November 8, 2011 (in relation to the electronic vaporizer marks), and October 1, 2013 (in relation to the smoker's articles marks).

    Plaintiff's office is located in Davie, Florida. It is from that location plaintiff ships its products. Plaintiff expends significant time, money, and effort in promoting its products using its marks, and has built up value and goodwill in the marks.

On January 16, 2014, U.S. Customs and Border Protection ("USCBP") intercepted a shipment, which defendant imported through Bernal Electronic Group of Hong Kong, bearing counterfeit trademarks. The shipment consisted of one hundred counterfeit Atmos RX vaporizers, fifty counterfeit Atmos batteries, ninety-nine counterfeit Atmos vaporizer tips, one hundred counterfeit Atmos Micro G coils with mesh, and one hundred counterfeit Atmos Globe vaporizers. USCBP notified plaintiff of the seizure on January 22, 2014.

Plaintiff filed suit on March 7, 2014. It properly and timely served defendant on March 13, 2014, making defendant's answer due April 3, 2014. (Dkt. 4). Defendant neither appeared nor answered the complaint, leading to a clerk's entry of default on April 7, 2014. (Dkt. 6). Plaintiff filed this motion for default judgment along with an affidavit from its attorney Glen H. Shrayer on May 9, 2014 (Dkt. 7), and served the motion on defendant on May 14, 2014. (Dkt. 10). Defendant has yet to enter an appearance, and has not filed a response to the motion for default judgment.

## II. Standard

Federal Rule of Civil Procedure 55(b) permits the Court to enter a default judgment against a defendant who has failed to appear. The court must exercise "sound judicial discretion" in its determination whether to enter a default judgment. Wright & Miller, 10A Federal Practice & Procedure, § 2685 (3d ed. 1998) (collecting cases). Federal Rule of Civil Procedure 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

## III. Analysis

Plaintiff asks for two forms of relief based on violations of several sections of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and a common-law claim for unfair competition. First, it asks for a permanent injunction barring plaintiff, his agents, servants, employees, and attorneys from:

1) Purchasing, importing, selling, offering for sale, or otherwise using in commerce any counterfeit e-cigarettes/vaporizers bearing the Atmos Marks, including without limitation vaporizers displaying the ATMOS RX® trademarks; and

4

2) Assisting, aiding, or abetting any other person or entity in purchasing, importing, selling, offering for sale, or otherwise using in commerce any counterfeit e-cigarettes/vaporizers bearing the Atmos Marks, including without limitation vaporizers displaying the ATMOS RX® trademarks.

Plaintiff also seeks statutory damages under the Lanham Act. 15 U.S.C. § 1117(c).

### A. Substantive Claims

Plaintiff originally brought claims under three sections of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a)(1)(a), and 1124; one section of the Tariff Act, 19 U.S.C. § 1526(a); violation of the Michigan Consumer Protection Act (MCPA), M.C.L. § 445.903; and common-law claims of unfair competition and unjust enrichment. In its motion for default judgment, plaintiff asks for a default judgment to be entered on the Lanham Act, Tariff Act, and common-law unfair competition claims.[1]

---

[1] The Court held a telephonic status conference concerning this motion with plaintiff's counsel on June 3, 2014. At that conference, plaintiff informed the Court that it would voluntarily dismiss the MCPA and unjust enrichment claims against defendant. Accordingly, those claims are dismissed.

The first claim is for trademark infringement under the Lanham Act. The Act provides in relevant part that:

> **(1)** Any person who shall, without the consent of the registrant--
>
> **(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;
>
> […]
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1). The second claim is for false designation or origin under the Lanham Act, which provides that:

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,
>
> […]

6

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

The third Lanham Act claim bars the importation of merchandise that copies or simulates any trademark registered in the United States and is calculated to induce the public to believe that the merchandise was, in fact, manufactured in the United States. 15 U.S.C. § 1124. The Sixth Circuit's test for all three violations of the Lanham Act is the same: the likelihood of confusion between the two marks. *Audi AG v. D'Amato*, 469 F. 3d 534, 542 (6th Cir. 2006) (citing *Two Pesos v. Taco Cabana*, 505 U.S. 763, 780 (1992)).

The Tariff Act claim likewise bars the importation of any merchandise of foreign manufacture bearing a trademark owned and registered by a citizen of or corporation or association created or organized within the United States without written consent of the owner of the trademark at the time of the merchandise's entry into the United States. 19 U.S.C. § 1526(a).

The Michigan Supreme Court has defined unfair competition as follows:

7

> Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor. The rule is generally recognized that no one shall by imitation or unfair device induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for his own product or merchandise.

*Schwannecke v. Genesee Coal & Ice Co.,* 262 Mich. 624, 627 (Mich.1933).

On review of the complaint, plaintiff has alleged sufficient facts, accepted as true, for the Court to determine that defendant infringed trademarks 4,052,873, 4,052,867, 4,410,411, and 4,410,410 in violation of the Lanham Act. The defendant's acts also constituted false destination or origin and importation of deceptive goods in violation of the Lanham Act.

The defendant's acts likewise violated the Tariff Act, 19 U.S.C. § 1526(a), and constituted unfair competition under Michigan law. Plaintiff does not seek relief as a result of either of these violations, however.

## B. Injunctive Relief

A party may seek a permanent injunction under the Lanham Act to prevent future infringement of a mark. 15 U.S.C. § 1116(a). Where liability has been established, and there is a threat of continuing infringement, the plaintiff is entitled to injunctive relief. *See, e.g., Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 492 (6th Cir. 2007) (collecting cases).

"A plaintiff seeking a permanent injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at law, that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, and that it is in the public's interest to issue the injunction." *Audi*, 469 F.3d at 550 (internal quote marks and further citation omitted).

In regards to the first factor, "copyright infringement is presumed to give rise to irreparable injury." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (quoting *Capitol Records, Inc. v. Zahn,* 2007 WL 542816, *4 (M.D.Tenn. Feb.16, 2007) (slip op.)) (further citations omitted).

9

In regards to the second factor, where there is potential for future harm from infringement, there is no adequate remedy at law. *Audi*, 469 F.3d at 550. Here, plaintiff stands at continued risk of further importation and potential commercial sale of infringing products by defendant absent an injunction.

In regards to the third factor, the balance of hardships between plaintiff and defendant weighs in favor of relief in equity. The only harm to defendant is the potential loss of revenue from illegal sales of infringing materials; compliance with the law is not cognizable harm under a permanent injunction analysis. *Accord Capitol Records, Inc. v. Zahn*, 06-cv-0212, 2007 WL 542816, at *4 (M.D. Tenn. Feb. 16, 2007); *Microsoft*, 490 F. Supp. 2d at 883. Plaintiff, meanwhile, will be harmed through potential loss of sales, confusion in the marketplace, and potential loss of goodwill in its marks absent an injunction.

Finally, granting the injunction would serve the public interest for two reasons: it would "prevent[] consumer confusion and deception in the marketplace and protect[] the trademark holder's property interest in the mark." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006).

Plaintiff has satisfied all four elements necessary for injunctive relief, and it is entitled to a permanent injunction.

### C. Statutory Damages Under the Lanham Act

Although the Court takes the factual allegations of the complaint as true in light of defendant's default, the plaintiff must still prove the amount of its damages. *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009).

Plaintiff has elected to pursue statutory damages under the Lanham Act. The Act permits damages of $1,000 to $200,000 per counterfeit mark regardless of willfulness, and up to $2,000,000 per mark if the use of the counterfeit mark is determined to be willful. 15 U.S.C. § 1117(c). Plaintiff argues that defendant's use of its marks was willful, and asks for a total award of $2,000,000 for use of the four marks, or $500,000 per mark.

A defendant's default permits a court to infer willfulness in the defendant's violation of the Lanham Act. *See, e.g., Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (inferring willful violation of the Lanham Act from default); *Microsoft*, 490 F. Supp. 2d at

880 ("[A] court may infer willfulness from defendant's default."). The Court does so here.

The constraints on courts in determining statutory damages under the Lanham Act are minimal. Pursuant to Fed. R. Civ. P. 54(c), the Court's total award may not exceed $500,000 per mark infringed; otherwise, the court is constrained only by what it "considers just." 15 U.S.C. § 1117(c). Statutory damages are appropriate even where "actual damages are nominal or non-existent." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006). Deterrence of future violations of the Lanham Act is also a proper objective of statutory damages. *Id.* at 852-53.

A survey of other statutory damage awards indicates that $500,000 per mark may be excessive in this case. In *Ford*, the plaintiff was awarded $100,000 in statutory damages as it requested for a single infringed mark on a website. *Id.* at 853. In *Microsoft Corp. v. McGee*, the court awarded a requested $100,000 per each of five trademarks infringed, based on the acquisition of at least 784 units of infringing software. *Microsoft*, 490 F. Supp. 2d at 882. In *Coach, Inc. v. Goodfellow*, the Sixth Circuit upheld a jury award of $240,000 per mark

12

for twenty-one infringed marks used on over 4,600 items.  *Coach*, 717 F.3d 498, 505.  Other courts have similarly awarded much smaller damage amounts per infringed mark, even in cases of willful violation of the Lanham Act.  *See, e.g.*, *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 585 (E.D. Pa. 2002) (awarding $166,666.67 per mark for six Louis Vuitton marks and $250,000 per mark for two Oakley marks); *Microsoft Corp. v. Logical Choice Computers, Inc.*, 99-C-1300, 2001 WL 58950, at *11 (N.D. Ill. Jan.22, 2001) (awarding $200,000 for each of seven trademarks).

In support of its decidedly higher request, plaintiff relies heavily on *Philip Morris USA Inc. v. Castworld Prods., Inc.*, a Central District of California case in which that court awarded maximum damages (then $1,000,000 per mark) for two willfully infringed marks.  *Philip Morris*, 219 F.R.D. 494, 501-02 (C.D. Cal. 2003).  The defendant in that case, however, imported forty thousand cases containing eight million counterfeit cigarettes.  The defendant's infringement in *Philip Morris* occurred on a substantially greater scale, and posed a substantially greater threat to the plaintiff's trademark than the defendant's infringement presents in this case.

Upon review of awards in similar cases, the Court will use a baseline award of $125,000 per infringed mark, for a total baseline award of $500,000.  In determining whether to award additional damages, the Court will take into account the following factors: the potential damage plaintiff may have suffered had the counterfeit items reached the market, the volume of counterfeit items defendant intended to sell, and the need to deter other potential sellers of counterfeit Atmos product.

The first and second factors work in concert.  Defendant ordered 449 counterfeit Atmos items with the obvious intent to sell them.  Among potential customers of the counterfeit product, there was a substantial risk of impairment of the marks' value and concurrent goodwill.  The issue, however, is that there were not nearly as many potential customers of the products as in *Castworld* or other, larger-scale infringement cases.  These factors do not warrant an additional award above the Court's baseline.

Plaintiff's best means of protecting its mark may be by deterring the myriad others, like defendant, who seek to order counterfeit Atmos products from foreign sellers for domestic distribution.   The strong

14

need to deter both the domestic distributors and international sellers targeting those distributors warrants an additional award. The Court will award an additional $25,000 per mark.

Plaintiff will receive $125,000 per mark plus a $25,000 additional award for each mark to encourage deterrence. Plaintiff will therefore receive $150,000 for each of the four marks, or $600,000 total.

## IV. Conclusion

For the reasons set forth above, plaintiff has proven entitlement to a permanent injunction and statutory damages under the Lanham Act. Accordingly,

Plaintiff Atmos Nation's motion for entry of default judgment is GRANTED;

The claims for violation of the MCPA, M.C.L. § 445.903, and unjust enrichment are DISMISSED; and

Rafi Kashat is permanently enjoined from further counterfeiting of this product or any other and $600,000 in statutory damages under the Lanham Act are AWARDED.

IT IS SO ORDERED.

15

Dated: June 16, 2014 s/Judith E. Levy
      Ann Arbor, Michigan JUDITH E. LEVY
United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 16, 2014.

                                        s/Felicia M. Moses
                                        FELICIA M. MOSES
                                        Case Manager